THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VERNON DeWITT, Defendant-Appellant.

Fifth District   No. 77-279

Opinion filed November 21, 1978.

G. MORAN, J., dissenting.

Michael J. Rosborough and Michael Yovovich, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Walden E. Morris, State's Attorney, of Harrisburg (Bruce D. Irish and John A. Clark, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Vernon De Witt, entered a negotiated plea of guilty to the offense of burglary in the circuit court of Saline County and was sentenced to two years probation. Seven months thereafter a petition to revoke probation was filed based on an alleged felony-theft committed by defendant. Following a probation revocation hearing the lower court found that defendant violated a condition of his probation as alleged and consequently sentenced defendant to a term of one to three years imprisonment on the underlying conviction. Defendant appeals.

Three issues are presented for our consideration: (1) whether the State failed to meet its burden of proof; (2) whether the defendant was denied a fair revocation hearing because the court refused to grant defense discovery motions; and (3) whether the court abused its discretion in denying a defense request for a continuance.

At the revocation hearing Henry and Edith Miller testified that on January 1, 1977, they drove to Indiana, leaving their son Donald to take care of their trailer-home. They returned on January 4, and discovered that a large quantity of coins were missing from their home. These included $177.50 in wrapped coin rolls and approximately $25 in additional loose change.

Donald Miller testified that after his parents left on January 1, he invited eight people to his parents' home for a party. Those present at the party were defendant, Roger Rochwalik, Agnes Snyder, two other women and three children. The party lasted throughout the night and into the morning of January 2.

Agnes Snyder then testified that on January 3 or 4, defendant came to her home which she shared with Roger Rochwalik. She stated that she was unsure of the date of this meeting and, on cross-examination, stated that this meeting may have likely taken place on January 3. This was the first time Snyder had seen Rochwalik and defendant together since the party at the Miller's home. During the course of the meeting, Rochwalik asked defendant, "to go outside and bring the money in." She stated that defendant then brought in several rolls of coins and counted out some money which was then used to purchase "pot." On the next night, defendant again visited Rochwalik and during this meeting Snyder heard defendant estimate that "we must have gotten $150 or $200 in coins." Snyder also testified that Rochwalik admitted to her that he had stolen the coins from the Miller's home.

In his own behalf, defendant testified that he had visited Rochwalik on January 2 and again on January 4, but he denied the substance of Snyder's testimony concerning the coins. Further, he denied stealing the coins. He testified that he slept at his home during the day of January 3 and had spent the remainder of that day with Linda Allen. Other defense witnesses testified that they saw defendant leave his home on January 3 with Allen.

■■■ The primary testimony linking defendant to the theft was that of Agnes Snyder. Defendant first contends that this testimony cannot support the trial court's finding because, he argues, it was inconsistent and untrustworthy. We have carefully reviewed the record and we find no substantial inconsistencies in Snyder's testimony. While the witness was unsure of the dates of the meetings between defendant and Rochwalik, her confusion in this respect was repeatedly admitted by her and, in any event, was of minor importance to the gist of her testimony. Defendant further urges that the "tenor" of her testimony was not worthy of belief and he points to various conflicts between her testimony and that of defense witnesses. However, questions of witness credibility and conflicting evidence are matters for the trial judge to resolve as the trier-

of-fact. Because he sees and hears the witnesses, he is in a position superior to a reviewing court for assessing their demeanor, judging their credibility and weighing the evidence. (*People v. Cooper*, 66 Ill. 2d 509, 363 N.E.2d 817; *People v. Crowell*, 53 Ill. 2d 447, 292 N.E.2d 721.) Only when the testimony is contrary to the manifest weight of the evidence will a reviewing court substitute its judgment for that of the trial court. (*People v. Crowell.*) In the instant case, we find the evidence neither so unsatisfactory, improbable, nor insufficient as to warrant disturbing the findings of the lower court.

We turn next to defendant's contention concerning discovery. Prior to the revocation hearing, defendant filed a motion requesting the production of any statements made by prosecution witnesses. The request was renewed at the hearing and was denied by the trial court. The record shows that there had existed several such written statements including one by Agnes Snyder.

Defendant contends that the lower court erred in denying the discovery under the Supreme Court Rules governing discovery in criminal cases (Ill. Rev. Stat. 1977, ch. 110A, pars. 411-415). In support thereof, he urges that we construe the language in Rule 411 liberally so as to require the application of the discovery rules in probation revocation proceedings. He also urges that the statutory rights to "confrontation, cross-examination and representation by counsel" of a probationer in a probation revocation hearing (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4(c)) would be illusory without the application of the discovery rules.

Initially we note that in his brief on appeal, defendant states that "[t]he loss of liberty occasioned by the revocation of probation is a sufficient deprivation to require a defendant to be accorded due process." In *Morrissey v. Brewer* (1972), 408 U. S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593, involving parole revocation proceedings, the United States Supreme Court held that due process mandates certain minimum requirements including "disclosure to the parolee of evidence against him". (408 U. S. 471, 489, 33 L. Ed. 2d 484, 499, 92 S. Ct. 2593, 2604.) The minimum due process requirements specified in *Morrissey* have also been held applicable to probation revocation proceedings. (*Gagnon v. Scarpelli* (1974), 411 U. S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756; see also *People v. Beard*, 59 Ill. 2d 220, 319 N.E.2d 745.) However, in the case at bar, no question is raised as to whether the denial of the disclosure requested constitutes a denial of minimum due process. While *Morrissey* and *Gagnon* may reflect a changing attitude toward discovery to meet due process requirements, we question the propriety of an intermediate court of appeal making the criminal discovery rules applicable to a revocation of probation proceeding, which is only ancillary to a proceeding in which conviction has been effected. In our hesitancy to

make such discovery rules applicable to a revocation proceeding we consider that discovery in criminal cases is of only recent origin, and that before discovery was provided in criminal cases, its lack was not considered a violation of due process in even the most serious criminal cases. At common law due process in criminal cases did not require discovery as it is known in criminal cases today. Particularly are we hesitant to require discovery in this case as a due process requirement, where that issue has not been squarely presented. Consequently, we expressly do not consider this issue. Instead, we are only presented with the narrow question of whether the application of the supreme court rules governing discovery was required in the instant case.

■■■ Supreme Court Rule 411 provides:

> "These rules shall be applied in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary. They shall become applicable following indictment or information and shall not be operative prior to or in the course of any preliminary hearing." (Ill. Rev. Stat. 1977, ch. 110A, par. 411.)

The plain language of Rule 411 requires that, for the discovery rules to apply, the accused must be "charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary." But a petition to revoke probation is not the equivalent to a criminal indictment or information. Even where the conduct alleged in a petition to revoke probation would also support a felony conviction, the petition does not itself constitute a felony charge, an adverse finding does not constitute a felony conviction, and a sentence subsequently imposed is not punishment for that offense. (*People v. Howell*, 46 Ill. App. 3d 300, 360 N.E.2d 1212; *People v. Kondo*, 51 Ill. App. 3d 874, 366 N.E.2d 990; see Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4.) Probation revocation proceedings, and any modification of sentence therefrom, goes only to the original conviction. Thus a defendant may lawfully both have his probation revoked and be criminally convicted based on the same criminal act. (*People v. Howell; People v. Kondo*.) Moreover, the conduct giving rise to a revocation of probation need not even be criminal in nature depending on the condition of probation violated.

Defendant argues that the purpose of Rule 411 is to require the application of the extensive discovery provided by the rules in a broad range of criminal cases. However, to the contrary, the purpose of Rule 411 is in fact to restrict the application of the discovery rules to only the most serious criminal cases. (*People v. Schmidt*, 56 Ill. 2d 572, 309 N.E.2d 557.) As stated in *Schmidt*:

> "Among the factors motivating the decision to restrict application of the rules to cases in which a penitentiary sentence was possible

was our awareness of the very substantial volume of less serious cases and the impact upon their expeditious disposition of the expanded discovery provided by the new rules." (56 Ill. 2d 572, 574-75, 309 N.E.2d 557, 558.)

Too, it must be remembered that there is a qualitative difference between a revocation of probation and a criminal conviction. (*People v. Beard,* 59 Ill. 2d 220, 319 N.E.2d 745.) In the former, unlike the latter, the defendant had already been convicted of the underlying offense, and the object of the proceeding is directed toward the consideration of the appropriateness of the sentence thereon rather than for punishment for the subsequent conduct alleged.

■■ Nor are we persuaded that defendant's rights to confrontation, cross-examination and representation by counsel encompass the application of discovery as provided by the discovery rules. A person charged with a misdemeanor is also entitled to similar rights and yet is also denied the advantage of the discovery rules. (*People v. Schmidt.*) In the last paragraph of *Schmidt,* the court specified the scope of discovery in misdemeanor cases provided by case law and statute. (56 Ill. 2d 572, 575, 309 N.E.2d 557, 558.) In the instant case, however, no contention is raised that the instant discovery requested in the lower court is authorized on any ground other than the discovery rules. These rules we find to be inapplicable in probation revocation proceedings.

● 6 Alternatively, defendant argues that the lower court had the discretion, nonetheless, to apply the discovery rules if it so chose and that it abused its discretion in not having done so here. However, this argument was similarly raised, and rejected, in *Schmidt,* wherein the court stated:

"A second consideration in reaching our conclusion [to adopt Rule 411] was our desire to eliminate, so far as feasible, substantial variances in the scope of discovery permitted in the courts of this State. To now hold, as defendant urges we do, that the trial judges have discretion to apply our criminal discovery rules to less serious offenses would renew in those cases the very problems we sought to eliminate in the more serious cases." (56 Ill. 2d 572, 575, 309 N.E.2d 557, 558.)

Accordingly, we find no error in the lower court's refusal to apply the discovery rules to the instant proceedings.

■■ Lastly, defendant contends that the trial court abused its discretion in denying a continuance. Defendant moved for the continuance during trial for the purpose of producing Linda Allen as a defense witness. He further offered to prove that Allen, if called, would support his testimony that he had spent the night of January 3 with her and not at the home of Snyder and Rochwalik. First, we note that defendant, defendant's mother and defendant's grandmother all testified that he had been with Allen on that

date. Hence, Allen's testimony to that effect would only have been cumulative. (See *People v. DeMary*, 37 Ill. 2d 364, 227 N.E.2d 361.) Secondly, in any event, defendant admitted that he twice visited the Snyder-Rochwalik home as Snyder so testified, but he stated that the visits took place on January 2 and January 4. Snyder, who stated that she was unsure of the dates of these meetings, placed the first of these, when pressed to do so on cross-examination, on January 3. In light of the evidence, the date of the first of these meetings, whether January 2 or 3 could have had little bearing on the issues at trial. Finally, the record demonstrates that defendant was not surprised by Snyder's testimony placing the first meeting on January 3, and the failure to produce Allen as a witness, if such was felt necessary, was a result of defendant's own lack of diligence. (*People v. Hudson*, 97 Ill. App. 2d 362, 240 N.E.2d 156.) Consequently, we find no merit to defendant's contention.

For the foregoing reasons, the judgment of the circuit court of Saline County is affirmed.

Affirmed.

KARNS, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
I dissent. See *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756, and *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593.