915 P.2d 906

### STATE of New Mexico, Plaintiff–Appellee,

v.

### Cody L. DeBORDE, Defendant–Appellant.

### No. 16073.

Court of Appeals of New Mexico.

Feb. 23, 1996.

Certiorari Denied April 17, 1996.

Tom Udall, Attorney General, Patricia A. Gandert, Assistant Attorney General, Santa Fe, for Appellee.

T. Glenn Ellington, Chief Public Defender, Sue A. Herrmann, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

BUSTAMANTE, Judge.

1. Defendant Cody DeBorde appeals from a judgment revoking his probation. Defendant asserts he was unable to adequately prepare for his hearing because the District Attorney (DA) refused to provide reasonable discovery concerning the witnesses and evidence the DA intended to present. Defendant advances several constitutional and statutory arguments. Because we find that New Mexico's rules of criminal procedure require reasonable discovery, including disclosure of adverse witnesses prior to a probation revocation hearing, we do not reach the constitutional issues. We reverse the district court order revoking probation and remand for a new hearing.

### BACKGROUND

2. When Defendant reported to the probation office for a regular visit, his probation officer, Loren Otero, noticed that Defendant was acting strangely. Defendant would not make eye contact with Otero and was unresponsive to his questions. Otero thought Defendant was under the influence of alcohol or illegal drugs in violation of the conditions of Defendant's probation and he requested a urine sample. The sample was sent to Drug Detection Services (DDS) in Albuquerque for analysis and tested positive for over-the-counter and illegal amphetamine class drugs and for alcohol. Otero filed a report of probation violation recommending that Defendant's probation be revoked.

3. Defendant twice demanded disclosure of witnesses the State intended to call at his revocation hearing. Initially, Defendant requested "disclosure of the materials enumerated in SCRA1986, 5–501," including exculpatory information, information tending to impeach State witnesses, and evidence tending to negate guilt. Defendant's second demand for disclosure requested only the iden-

tity of the State's intended witnesses. The State did not respond to these requests.

4. At the hearing the State called Ron Smock, president of DDS, as an expert witness. Defendant objected, arguing that the State's failure to respond to his disclosure requests hampered the exercise of his constitutional right to confront and cross-examine the witness. The district judge conceded that he did not know whether there is a rule requiring disclosure, but stated that, if there is one, "we're waiving that rule and go[ing] ahead."

5. Defendant conducted an extensive voir dire questioning Smock's qualifications. Smock testified he had no college degree and had never been published in a juried journal. Smock estimated he had earned about ninety-two hours of college credit, approximately half of which were in science or pre-med courses. Defendant also questioned Smock about a trial involving similar evidence in which Smock was allegedly rejected as an expert witness. Smock denied knowledge that he had previously been rejected as an expert. Smock was qualified and testified as an expert.

6. The State contends Defendant was not surprised by Smock's appearance as its expert witness because he frequently testifies as the State's expert witness when DDS performs drug analyses. Additionally, Smock's initials appeared next to the words "reviewed by" on a confirmation report from DDS. The State further asserts Defendant was not prejudiced by its failure to disclose Smock's identity because Defendant knew "someone" from DDS would testify and he could subpoena DDS records to get information about Smock.

## DISCUSSION

### AVAILABILITY OF DISCOVERY AT PROBATION REVOCATION HEARINGS UNDER NEW MEXICO'S DISCOVERY RULES

7. The procedural rule governing discovery in criminal proceedings requires the State to disclose "a written list ... of all witnesses which the prosecutor intends to call at the trial, together with any statement made by the witness." SCRA 1986, 5–501(A)(5) (Repl.1992). This rule is applicable to "all criminal proceedings." SCRA 1986, 5–101(A) (Repl.1992). Whether probation revocation hearings should be treated to some degree as "criminal proceedings" governed by our rules of criminal procedure is an issue of first impression.

8. As a general rule, proceedings to revoke probation are not considered to be part of a criminal prosecution, but have been "analogized to a hearing before an administrative body where '[s]trict observance of technical rules of law and procedure' is not required." *State v. Vigil*, 97 N.M. 749, 752, 643 P.2d 618, 621 (Ct.App.1982) (quoting *Robinson v. Cox*, 77 N.M. 55, 58, 419 P.2d 253, 256 (1966)).

9. We recognize, and are mindful of, the distinction between pre-sentence proceedings, which are designed to determine guilt, and post-sentence proceedings, in which the issue is whether conditions of probation (or parole) have been violated. We also recognize, however, that the potential end result of both proceedings is loss of liberty. While the probationer's freedom is necessarily more constrained than that of the ordinary citizen, it is yet valuable and its termination calls for a reasonably orderly process, including at least some discovery prior to the hearing. The rules of criminal procedure, applied with due regard to the nature of probation revocation hearings, provide an acceptable framework for that process. While we acknowledge that probationers are not entitled to full discovery under the rules, we are persuaded that they are entitled to reasonable discovery in these hearings. *See State v. Sanchez*, 109 N.M. 718, 719, 790 P.2d 515, 516 (Ct.App.), *cert. denied*, 109 N.M. 704, 789 P.2d 1271 (1990).

10. Florida and Arizona have decided this issue in accordance with their respective discovery rules which are similar to ours. *See* Fla.R.Crim.P. 3.220; Ariz.R.Crim.P. 1.1. The Florida Supreme Court considered the issue in *Cuciak v. State*, 410 So.2d 916 (Fla. 1982), and held that a defendant in a probation revocation proceeding is not entitled to full discovery, but is entitled to reasonable discovery. *Id.* at 917. Although Florida's

discovery rules (like ours) contemplate a trial context, the court held that "basic fairness requires an extension of discovery into the probation revocation setting." *Id.* at 918. Although *Cuciak* allows the trial court to decide what discovery is reasonable, it does not allow absolute discretion. In the interest of fair play and justice, "[a]t the very least a probationer is entitled to the name and identification of his accusers and other basic information that is reasonably necessary to the preparation of his defense." *Id.*

11. Arizona also extended its discovery rules to apply to probation revocation hearings, although its rules of criminal procedure also do not facially apply to such hearings. *Kanuck v. Meehan,* 165 Ariz. 282, 798 P.2d 420 (Ct.App.1990). The court recognized that, although a probationer is not entitled to all the rights of an accused in a criminal prosecution, he or she "must be allowed to conduct reasonable discovery in order to enforce his/her right to disclosure of evidence and to prepare an effective cross-examination." *Id.* 798 P.2d at 422. The court held that to achieve the "'greater accuracy and reliability which discovery provides'" a probationer was entitled to utilize discovery procedures to prepare for the hearing. *Id.* 798 P.2d at 423. We agree with the approach taken in *Cuciak* and *Kanuck.*

12. We are aware that Illinois has refused to extend its discovery rule to probation revocation proceedings. *See People v. DeWitt,* 66 Ill.App.3d 146, 22 Ill.Dec. 886, 890, 383 N.E.2d 694, 698 (1978). However, the Illinois rules of criminal procedure apply to "cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned." *Id.* at 889, 383 N.E.2d at 697. This language is more restrictive than New Mexico's rule.

■ 13. Disclosing the information described in SCRA 5–501(A) should not prove unduly burdensome to the State. This basic information should be disclosed unless the district court finds good cause not to do so. Beyond this, we leave it to the district court's discretion to determine if further disclosure is reasonable under the circumstances of each case. However, as noted above, a pro-

bation revocation hearing is not a trial on a criminal charge. *State v. Sanchez,* 94 N.M. 521, 523, 612 P.2d 1332, 1334 (Ct.App.) *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980). To require full discovery in these proceedings, as well as the full panoply of protections available in criminal prosecutions, would interfere with the State's strong "interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial." *Morrissey v. Brewer,* 408 U.S. 471, 483, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972); *see also Cuciak,* 410 So.2d at 918.

■ 14. Finally, we must consider whether Defendant was prejudiced by the State's failure to respond to Defendant's requests for discovery; that is, was the outcome of the proceeding potentially affected? *See State v. Sandoval,* 99 N.M. 173, 175, 655 P.2d 1017, 1019 (1982). The outcome below could have been different if, through an enhanced ability to prepare for cross-examination, Defendant had been able to demonstrate that the State's expert witness was unqualified either to perform or interpret the drug analysis or to otherwise testify as an expert. Without Smock's testimony, the district court would have had an entirely different factual tableau to consider since the State's only other evidence was Otero's testimony that Defendant was acting strangely. Because the result might have been different, Defendant was likely prejudiced.

### CONCLUSION

15. The order revoking Defendant's probation is reversed and the matter is remanded for a new hearing consistent with this Opinion.

16. IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.