1997-NMCA-090

945 P.2d 1027

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Raymond MARQUART, Defendant– Appellant.**

**No. 17767.**

Court of Appeals of New Mexico.

July 30, 1997.

Certiorari Denied Sept. 17, 1997.

Tom Udall, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

DONNELLY, Judge.

1. In this appeal we examine the issue of whether the trial court erred in revoking Defendant's probation based, in part, on the basis of evidence obtained from an allegedly illegal search of Defendant's person and vehicle. Because we find that the exclusionary rule of Article II, Section 10 of the New Mexico Constitution applies in probation revocation hearings, we reverse and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

2. On June 17, 1996, Officer Paul Martino of the City of Tucumcari Police Department stopped Defendant for not wearing his seat belt. Martino testified that, as he approached Defendant's vehicle, both Defendant and his passenger, Gary Olguin, appeared to be acting in a "suspicious manner." The officer asked Defendant and Olguin to exit the vehicle because the officer stated he was concerned for his own safety. When Defendant got out of the vehicle, the officer saw that the vehicle had been "hot-wired." Martino then asked Defendant for his driver's license, proof of insurance, and registration. Defendant was unable to produce the items and told Martino that his license had been suspended.

3. Martino stated that he then conducted a pat-down search of Defendant because he continued to be concerned for his own safety. During this search, the officer testified he felt something bulky. Continuing with the search, Martino removed a small change purse from Defendant's rear, right pocket and unzipped it. Inside the purse he found a white envelope which he also opened. The envelope contained a white powdery substance which subsequently tested positive for methamphetamine.

4. Martino then asked Defendant if he could search the vehicle. He testified that Defendant gave his consent. In addition to the items found on Defendant's person, the officer found three hypodermic needles in a bag situated inside the vehicle. Following the discovery of these items, Defendant was placed under arrest. Martino then ran a computer check and verified that Defendant's license had been suspended.

5. At the time of this arrest, Defendant was on probation for prior drug-related offenses. Defendant had previously pled guilty to possession of methamphetamine, possession of drug paraphernalia, driving on a revoked license, and possession of marijuana, all growing out of a prior incident which occurred on August 29, 1995. As a result of the August 1995 charges, Defendant had received a suspended sentence and had been placed on probation for a period of eighteen months.

6. Following Defendant's June 17, 1996, arrest, the State moved to revoke Defendant's probation. At his probation revocation hearing, Defendant objected to the use of evidence which he claimed to have been illegally seized. Defendant asserted that Officer Martino's search was unconstitutional and all evidence seized as a result of the search was "fruit of the poisonous tree." He argued that the trial court erred in considering evidence illegally obtained and that the only evidence which should have been considered at the hearing to revoke probation related to his violations of the Motor Vehicle Code. The trial court responded, "We really didn't have a motion to suppress, that would be addressed to the underlying charge.... This was not a suppression hearing. This was a motion for probation revocation." The trial court proceeded to revoke Defendant's probation. The trial court found that Defendant had violated the terms of his probation by possessing a controlled substance, possessing drug paraphernalia, and driving while his license was suspended or revoked.

### ANALYSIS

7. Defendant contends that the exclusionary rule applies to probation revocation hearings because the rule protects his constitutional right to be free from unreasonable searches and seizures pursuant to Arti-

cle II, Section 10 of the New Mexico Constitution. In addressing this issue, both parties correctly observe that the question of whether the exclusionary rule applies in a probation revocation proceeding constitutes an issue of first impression in New Mexico. In examining the merits of this argument, we review the constitutional issue de novo. *State v. Attaway,* 117 N.M. 141, 145, 870 P.2d 103, 107 (1994) (applying de novo review to threshold constitutional issues).

8. Defendant, although acknowledging that the trial court could properly revoke his probation on any of the three grounds found by the court, argues that absent evidence of the drug and drug paraphernalia charges, it was questionable as to whether the trial court would have ordered the revocation of his probation solely on the driving charges. He emphasizes, for instance, that the trial court stated it would have considered some alternative treatment had the facts shown that there had been merely "a technical violation of his probation agreement or some other matter."

9. The State argues that New Mexico's exclusionary rule does not apply to probation revocation hearings because such proceedings are not criminal prosecutions or trials. It points out correctly that this Court has held that the full panoply of rights possessed by a defendant in a criminal prosecution do not apply in probation revocation proceedings. *See State v. Sanchez,* 109 N.M. 718, 719, 790 P.2d 515, 516 (Ct.App.1990). Instead, the State contends only minimum due process requirements must be met. *See id.* Responding to these contentions, Defendant argues, however, that, although all of the rights possessed by an accused in a criminal prosecution do not apply in probation revocation hearings, nevertheless, Article II, Section 10 of the New Mexico Constitution requires application of the exclusionary rule at probation revocation hearings, where the evidence in question is obtained as a result of an illegal search and seizure. The latter constitutional provision provides:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any

person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

10. Courts in other jurisdictions that have considered the question of whether the exclusionary rule applies to probation revocation proceedings have reached differing results. *See generally* Phillip E. Hassman, Annotation, *Admissibility, In State Probation Revocation Proceedings, of Evidence Obtained Through Illegal Search and Seizure,* 77 A.L.R.3d 636 (1977 & Supp.1996). Courts which have declined to apply the exclusionary rule in probation revocation proceedings have generally followed the rationale applied by a majority of federal circuits which have held that the exclusionary rule operates as a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect, and that the rule does not bestow a personal constitutional right upon an aggrieved party. *See, e.g., United States v. Bazzano,* 712 F.2d 826, 830–34 (3d Cir. 1983) (en banc) (discussing deterrence rationale of Fourth Amendment exclusionary rule as applied to probation revocation); *United States v. Frederickson,* 581 F.2d 711, 713 (8th Cir.1978) (holding Fourth Amendment exclusionary rule inapplicable to probation revocation proceedings). *But see United States v. Workman,* 585 F.2d 1205, 1211 (4th Cir.1978) (determining rule applicable to parole revocation hearing).

11. State courts that have followed the approach of a majority of the federal circuit courts have similarly concluded that the exclusionary rule should not apply in probation revocation hearings. Courts which have applied this result generally apply a balance of interest analysis utilized by the United States Supreme Court to determine whether to extend the reach of the exclusionary rule. *See United States v. Calandra,* 414 U.S. 338, 349–52, 94 S.Ct. 613, 620–22, 38 L.Ed.2d 561 (1974) (considering whether to extend exclusionary rule to grand jury proceedings). In resolving the question of whether to apply the exclusionary rule to probation revocation proceedings, state courts have frequently sought to weigh the prophylactic effect of the

exclusionary rule against the perceived adverse effect the application of such rule would impose upon the rehabilitative objectives of the probationary process and the requirements of judicial integrity. *See State v. Turner,* 257 Kan. 19, 891 P.2d 317, 320 (1995); *see also State v. Sears,* 553 P.2d 907, 913 (Alaska 1976); *State v. Alfaro,* 127 Ariz. 578, 623 P.2d 8, 9 (1980) (en banc); *McGhee v. State,* 25 Ark.App. 132, 752 S.W.2d 303, 304–05 (1988); *People v. Wilkerson,* 189 Colo. 448, 541 P.2d 896, 898 (1975) (en banc); *Payne v. Robinson,* 207 Conn. 565, 541 A.2d 504, 507 (1988); *People v. Dowery,* 20 Ill. App.3d 738, 312 N.E.2d 682, 687 (1974), *aff'd,* 62 Ill.2d 200, 340 N.E.2d 529 (1975); *Dulin v. State,* 169 Ind.App. 211, 346 N.E.2d 746, 751 (1976); *Tiryung v. Commonwealth,* 717 S.W.2d 503, 504 (Ky.Ct.App.1986); *Chase v. State,* 309 Md. 224, 522 A.2d 1348, 1362 (1987); *Commonwealth v. Olsen,* 405 Mass. 491, 541 N.E.2d 1003, 1006 (1989); *People v. Perry,* 201 Mich.App. 347, 505 N.W.2d 909, 911–12 (1993); *State v. Field,* 132 N.H. 760, 571 A.2d 1276, 1279–80 (1990); *Richardson v. State,* 841 P.2d 603, 605 (Okla.Crim.App. 1992)[1]; *Spratt,* 386 A.2d at 1095–96; *Johnson v. Commonwealth,* 21 Va.App. 172, 462 S.E.2d 907, 909–10 (1995).

12. Other courts have applied a different rationale in resolving this issue and found that the exclusionary rule to be applicable in probation revocation hearings based upon constitutional privacy rights. *See Workman,* 585 F.2d at 1211; *State v. Dodd,* 419 So.2d 333, 334–35 (Fla.1982); *Howard v. State,* 168 Ga.App. 143, 308 S.E.2d 424, 425 (1983); *State v. McMilliam,* 243 N.C. 775, 92 S.E.2d 205, 208 (1956); *State ex rel. Juvenile Dep't v. Rogers,* 314 Or. 114, 836 P.2d 127, 128–30 (1992) (en banc); *Mason v. State,* 838 S.W.2d 657, 659–60 (Tex.App.1992); *State v. Lampman,* 45 Wash.App. 228, 724 P.2d 1092, 1095 (1986).

▮ 13. The State urges this Court to restrict application of the exclusionary rule to probation revocation hearings, in part, because a majority of courts in other jurisdic-

tions have similarly done so. However, as Defendant points out, the determinative question in the case before us is whether the provisions of Article II, Section 10 of our state constitution provide a higher threshold of protection than that provided under the Fourth Amendment.

14. The State relies in part upon *State v. Gardner,* 95 N.M. 171, 174, 619 P.2d 847, 850 (Ct.App.1980); *State v. Gallagher,* 100 N.M. 697, 699, 675 P.2d 429, 431 (Ct.App.1984). We have examined each of the cases the State relies upon in support of its claim that a probationer is not entitled to state constitutional protections and find them unpersuasive under the circumstances existing here. Both cases discuss the rights of a probationer contesting a search by a probation officer, where a submission to search by the *probation officer* was a specific condition of the individual's probation. *Gardner,* 95 N.M. at 174, 619 P.2d at 850; *Gallagher,* 100 N.M. at 698, 675 P.2d at 430. In addition, the *Gallagher* Court relied solely on the Fourth Amendment and declined to decide, under that provision, "whether probationary search conditions may be extended to allow searches by *any* law enforcement officials." *Gallagher,* 100 N.M. at 699, 675 P.2d at 431. Similarly, this Court's decision in *Gardner* does not provide support for warrantless searches of individuals on probation by any officer. The *Gardner* Court upheld the search of a probationer where "[the search] was requested by the probation officer." *Gardner,* 95 N.M. at 175, 619 P.2d at 851.

> "[A]n ordinary law enforcement official [is not] precluded from seeking the probationer's consent to conduct a search provided no coercion, actual or threatened, is employed. The probationer's refusal to accede to such a request makes it necessary either that the matter be referred to the probation officer or that a warrant be obtained."

*Id.* (citing *United States v. Consuelo–Gonzalez,* 521 F.2d 259, 267 (9th Cir.1975)).

---

1. Recognizing exception to the rule denying application of the exclusionary rule in probation revocation proceedings where an illegal seizure was specifically directed at the probationer or the acts were sufficient to shock the conscience of the court or were conducted in bad faith. *Richardson,* 841 P.2d at 606; *see also People v. Atencio,* 186 Colo. 76, 525 P.2d 461, 463 (1974) (en banc); *Chase,* 522 A.2d at 1363; *State v. Spratt,* 120 R.I. 192, 386 A.2d 1094, 1095 (1978).

15. In support of its assertion that a probationer's constitutional rights are limited, the State also cites *State v. DeBorde*, 121 N.M. 601, 603, 915 P.2d 906, 908 (Ct.App.), *cert. denied*, 121 N.M. 644, 916 P.2d 844 (1996). *DeBorde*, however, simply held that probationers are entitled to reasonable, rather than full, discovery and noted that " ' "strict observance of technical rules of law and procedure" is not required.' " *Id.* at 603, 915 P.2d at 908 (quoting *State v. Vigil*, 97 N.M. 749, 752, 643 P.2d 618, 621 (Ct.App. 1982) (citation omitted)). The personal right raised by Defendant here and which is embodied in Article II, Section 10, however, is more than "technical rules of law and procedure." *Cf. Amiss v. State*, 135 Ga.App. 784, 219 S.E.2d 28, 30 (1975) (finding use of illegally seized evidence at probation revocation hearing is no less an invasion of an individual's constitutional rights than use of such evidence at trial).

16. We think it is clear that the provisions of Article II, Section 10 of the New Mexico Constitution extend the application of the exclusionary rule to probation revocation proceedings. *See, e.g., State v. Gomez*, 122 N.M. 777, 782, 932 P.2d 1, 6 (1997). Our Supreme Court in *Gomez* pointed out that certain provisions of our state constitution may provide a higher threshold of protection than parallel federal constitutional provisions and declined to interpret the New Mexico Constitution in lock-step with federal precedent interpreting provisions of the United States Constitution. *See id.; see also Campos v. State*, 117 N.M. 155, 158, 870 P.2d 117, 120 (1994) (declining to adopt federal rule allowing warrantless arrest without exigent circumstances); *State v. Cordova*, 109 N.M. 211, 217, 784 P.2d 30, 36 (1989) (rejecting federal "totality of the circumstances" analysis of probable cause); *see also State v. Gutierrez*, 116 N.M. 431, 445, 863 P.2d 1052, 1066 (1993) (rejecting the federal rationale for the exclusionary rule based on deterring police misconduct). In *Gutierrez* our Supreme Court declined to apply the federal rationale for determining whether to apply certain exceptions to state constitutional protections against unreasonable searches and seizures and held that "[t]he constitutional right to be free from unreasonable search and seizure includes the exclusionary rule and precludes a good-faith exception." *Id.* (emphasis omitted); *see also State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (Decisions involving the determination of the reasonableness of search and seizure issues require "the balancing of legitimate law enforcement interests against a defendant's privacy rights . . . .").

17. The New Mexico Supreme Court in *Gutierrez* distinguished its rationale for application of the exclusionary rule from that of the United States Supreme Court. While the United States Supreme Court held that the purpose of the exclusionary rule is to deter police misconduct, the New Mexico Supreme Court has held that the focus of the exclusionary rule "is to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure." *Gutierrez*, 116 N.M. at 446, 863 P.2d at 1067. Accordingly, our Supreme Court in *Gutierrez* emphasizes that our state constitution focuses on the constitutional rights of individuals; thus, the exclusionary rule is not a "mere 'judicial remedy' " for unconstitutionally seized evidence. *Id.* Application of the exclusionary rule to probation revocation proceedings is consistent with this state's constitutional purpose.

18. Nor do we believe that NMRA 1997, 11–1101(D)(2), making the Rules of Evidence inapplicable to probation revocation hearings, militates against the application of the exclusionary rule in such hearings. *Cf. State v. Hensel*, 106 N.M. 8, 10, 738 P.2d 126, 128 (Ct.App.1987) (holding that defendant has a constitutional right to confront hearsay declarant in suppression hearing under certain circumstances).

19. In light of the express provisions of Article II, Section 10 of the New Mexico Constitution, we reject the State's contention that the exclusionary rule does not apply to probation revocation proceedings. Our ruling, however, does not prevent a court from imposing as a condition of probation that the probationer give his or her consent to reasonable warrantless searches by a *probation officer* to ensure compliance with the condi-

tions of probation.[2] *See Gardner*, 95 N.M. at 175, 619 P.2d at 851 (search of probationer held valid if carried out in accordance with terms of probation); *Howard*, 308 S.E.2d at 425 (search by probation officer upheld as reasonable if carried out in accord with standard procedures).

20. Having found that Article II, Section 10 of the New Mexico Constitution is applicable to probation revocation hearings, we conclude that this case should be remanded to the trial court to determine whether the exclusionary rule bars the evidence claimed to have been illegally seized. If the facts are found to require the application of the exclusionary rule, the trial court should determine whether the violations of the Motor Vehicle Code warrant revocation of Defendant's probation. If the search and seizure is determined to be lawful, an amended order revoking Defendant's probation should be entered.

21. Because the trial court relied upon evidence claimed to have been unlawfully obtained in violation of Defendant's Article II, Section 10 rights, and because the trial court did not indicate whether, if the other evidence is determined to be subject to exclusion, Defendant's motor vehicle license violations, alone, under the circumstances warrant revocation of Defendant's probation, we remand to the trial court for consideration of these issues. *Cf. State v. Danek*, 118 N.M. 8, 11–12, 878 P.2d 326, 329–30 (1994) (remanding for trial court to determine whether single error created sufficient prejudice to require new trial).

*CONCLUSION*

22. The trial court's order revoking Defendant's probation is reversed, and the cause is remanded with instructions to redetermine the probation status and for further proceedings consistent with this opinion.

23. IT IS SO ORDERED.

APODACA, J. concurs.

HARTZ, C.J., specially concurs.

HARTZ, Chief Judge, specially concurring.

(24) I concur in the result. I do so because I believe that the result is compelled by the reasoning of the New Mexico Supreme Court in *State v. Gutierrez*, 116 N.M. 431, 863 P.2d 1052 (1993).

(25) The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article II, Section 10 of the New Mexico Constitution uses essentially the same language:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

For convenience, I shall refer to both provisions as the Fourth Amendment.

(26) Whether this case is difficult depends on the rationale one adopts for the exclusionary rule—the rule that evidence obtained in violation of a person's Fourth Amendment rights cannot be used by the government in a criminal trial of that person. One view is that the use at a criminal trial of unlawfully obtained evidence constitutes a violation of the Fourth Amendment. In other words, the Fourth Amendment itself commands the exclusionary rule. The other view is that the exclusionary rule is merely a means to an end—a remedy devised by the courts to protect Fourth Amendment rights.

---

**2.** The order of probation also included the following provision:

> You will permit any Probation Officer to visit you at your home or place of employment at any time and you will permit a warrantless

search, by a Probation Officer, of your person, automobile, residence, property and/or living quarters to ensure compliance of you [sic] Probation Conditions.

(27) To me, the choice between the two views is a relatively easy one. The Fourth Amendment says nothing about remedies. It prohibits certain governmental conduct, but it does not say what happens when the prohibition is violated. Can the victim of the violation sue for civil damages? Can the violator be prosecuted criminally? Can evidence unlawfully obtained be used against the victim in a criminal trial? a civil trial? The courts have a high duty to make Fourth Amendment rights a reality. But, at least as a theoretical matter, that reality could be achieved without the exclusionary rule.

(28) Hence, whether to adopt the exclusionary rule is a matter of pragmatic judgment. For the past several decades the dominant view has been that remedies short of the exclusionary rule are inadequate to protect Fourth Amendment rights. In the absence of the rule, courts have found law enforcement agencies all too willing to disregard constitutional restraints. *See, e.g., People v. Cahan*, 44 Cal.2d 434, 282 P.2d 905, 907–14 (1955).

(29) Yet, if the exclusionary rule is a means to an end, rather than an end in itself, it may be appropriate to set limits to its application. For example, the United States Supreme Court adopted what is called the good-faith exception in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Supreme Court held that evidence obtained pursuant to a warrant that is later determined to be invalid should not be suppressed if the officers' reliance on the warrant was objectively reasonable. *Cf. Cahan*, 282 P.2d at 909 n. 4 (suggesting possibility of good-faith exception to exclusionary rule). *Contra Gutierrez* (rejecting good-faith exception).

(30) From this pragmatic point of view, the question before us on appeal would be whether application of the exclusionary rule to probation-revocation hearings is necessary to deter violations of the Fourth Amendment by law enforcement officers. Reasonable people could differ in their answers. The fact that New Mexico has rejected the good-faith exception does not in itself compel exclusion. I note that the Connecticut Supreme Court has rejected the good-faith ex-

ception, *see State v. Marsala*, 216 Conn. 150, 579 A.2d 58 (1990), while ordinarily refusing to apply the exclusionary rule in probation-revocation proceedings, *see Payne v. Robinson*, 207 Conn. 565, 541 A.2d 504 (1988).

(31) Such analysis is unnecessary, however, if one adopts the view that the Fourth Amendment compels the exclusionary rule, regardless of pragmatic considerations. This is the view of the New Mexico Supreme Court. As I understand *Gutierrez*, the use at trial of unlawfully seized evidence in itself constitutes a violation of the New Mexico Constitution. Even if the exclusionary rule did not reduce by one iota the number or extent of unlawful searches or seizures in the State of New Mexico, and even if victims of unlawful searches or seizures could receive adequate damages in civil actions, the exclusionary rule would still have to be applied in New Mexico courts. In *Gutierrez* the Court stated unequivocally that its rejection of the good-faith exception to the exclusionary rule was not "premised on policy concerns of judicial integrity or deterrence," *id.* at 447, 863 P.2d at 1068, and that the only way to "effectuate the constitutional right to be free from unreasonable search and seizure" is "to deny the government the use of evidence obtained pursuant to an unlawful search." *Id.* at 445, 863 P.2d at 1066.

(32) I find nothing in the *Gutierrez* opinion that would support the exclusion of evidence in a criminal trial but not in a revocation proceeding. Therefore, the decision in the case before us is an easy one. The State cannot use unlawfully obtained evidence in a probation-revocation hearing. I express no view on what the result would be if the exclusionary rule in New Mexico were "premised on policy concerns of judicial integrity or deterrence."