APPEL, Justice
(dissenting).
I respectfully dissent from the opinion of the majority in this case. As previously indicated in State v. King, I view the so-called special-needs exception to the warrant requirement an unfortunate development. 867 N.W.2d 106, 134-36 (Iowa 2016) (Appel, J., dissenting). I view the majority’s bypass of the warrant requirement as unjustified. I also have little doubt that the exclusionary rule, under article I, section 8 of the Iowa Constitution, applies in a probation setting.
I. Warrant Requirement as Bulwark to Liberty.
In my view,.it is imperative that effective limitations -be placed on search and seizures by the government. The mechanism selected by the drafters of the Iowa Constitution, article I,-section 8, was the warrant requirement based upon probable cause which describes- with particularity the place to be searched and the person to be seized. See Iowa Const. art. I, § 8.
The warrant requirement of article I, section 8 is one of the bulwarks of individual liberties in Iowa. The warrant clause accomplishes a number of purposes. By requiring that warrants be based on probable cause, the public is protected from unwarranted and arbitrary searches and seizures. History has repeatedly shown that unfettered discretion by those with power inevitably leads to abuse of authority. ■
Equally importantly, however, the warrant requirement limits the purposes of the search and the areas to be searched. Thus, the warrant requirement means that law enforcement must not only demonstrate probable cause that a crime has been committed, but must also limit the search to areas that would reasonably turn up evidence of the suspected crime.
Finally, the warrant requirement is in writing, This salutary feature ensures that we have a contemporaneous record of the reasons for the search, the nature of the supporting probable cause, and any limitation imposed by the court. As can be seen, the warrant requirement does the heavy lifting of search and seizure law.
The importance of search and seizure protections was emphasized by Justice Robert Jackson after his return from Germany as Chief Prosecutor for the United States at the Nuremberg Trials. According to Justice Jackson,
These [search and seizure provisions] are not mere second-class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a popula *418 tion, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government.
Brinegar v. United States, 338 U.S. 160, 180, 69 S.Ct. 1302, 1313, 93 L.Ed. 1879, 1893 (1949) (Jackson, J., dissenting).
The great backbone of our constitutional tradition — the need for effective restraints against ai-bitrary government enforced by fearless courts — cannot be lost because of unpleasant factual contexts in which the issues present themselves. As noted by Justice Frankfurter decades ago,
It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people.... [W]e must deal with [the defendant’s] case in the context of what are really the great themes expressed by the Fourth Amendment.
United States v. Rabinowitz, 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653, 662 (1950) (Frankfurter, J., dissenting).
Moreover, we should not succumb to tired notions of efficiency, reasserted by some on a decennial basis, to dilute the constitutional protections. As noted by Justice Stewart, we must never forget that “the mere fact that law enforcement may be made less efficient can never by itself justify disregard of the Fourth Amendment.” Mincey v. Arizona, 437 U.S. 385, 393, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978).
Further, because of the centrality of search and seizure law to our constitutional fabric, we must, as was done at the dawning of the last century, construe the search and seizure provision in article I, section 8 “in a broad and liberal spirit.” State v. Height, 117 Iowa 650, 657, 91 N.W. 935, 937 (1902) (quoting People v. Forbes, 143 N.Y. 219, 38 N.E. 303, 305 (1894)). If we are to do our job properly, every one of our draft search and seizure opinions should be held up against this standard before our work is completed.
Most emphatically, search and seizure law cannot, and must not, devolve into a question of modern, pragmatic “reasonability” untethered from the warrant requirement. For starters, the language of the constitutional provision, taken in context, does not allow it. As noted by Justice Frankfurter, “One cannot wrench ‘unreasonable searches’ from the text and context and historic content of the Fourth Amendment.” Rabinowitz, 339 U.S. at 70, 70 S.Ct. at 436, 94 L.Ed. at 662; see also State v. Ochoa, 792 N.W.2d 260, 289 (Iowa 2010).
Further, to do so lays the. groundwork for unprincipled decision-making based largely on after-the-fact calculations rooted in personal philosophies. Indeed, every time a new “special needs” exception is developed or expanded, courts are rewriting the constitutional fabric of search and seizure law to fit the court’s perception of a desired public policy. The use of “rea-sonability” untethered to the warrant requirement as the touchstone of search and seizure law amounts to the following constitutional rule: The warrant requirement applies, unless we think it wise that it does not apply. It is a short step to say that the warrant requirement is fine, as long as there are no adverse consequences. Or, one might say, when an individual needs the protection of the warrant requirement the most, there will be an available off-the-shelf exception to avoid it. Viewing search and seizure from the viewpoint of law enforcement, courts applying the “reasona-bility” approach risk functioning more as an internal police commission flagging only .exceptionally flagrant violations rath *419 er than as an independent judicial tribunal jealously guarding individual rights.
Of course, there have long been a few jealously guarded exceptions to the warrant requirement. For example, searches in exigent circumstances where probable cause may be present but there is no time to obtain a warrant have traditionally been upheld.
But the exceptions should be applied sparingly by the judiciary in order to fiercely guard the constitutional role of the warrant. Such fierce defense of the warrant requirement is not evident in this case. Indeed, the notion the warrant requirement is subject to only “jealously and carefully drawn exceptions,” a notion which we have repeatedly stated, is notably absent in this case. Ochoa, 792 N.W.2d at 278 (quoting Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514, 1519 (1958)); State v. Strong, 493 N.W.2d 834, 836 (Iowa 1992). The majority opinion seems more interested in jealously guarding the discretion of law enforcement but not the warrant requirement.
Here is why I draw that conclusion. In King, we emphasized that parole was “divorced from the general interests of the state in law enforcement.” 867 N.W.2d at 122 (majority opinion). Here, obviously, the “warrant team,” the sworn law enforcement officers trained to arrest people and who had no relationship with parolees, can only be regarded as part of law enforcement in any functional sense. So, while King touted the “divorce” between parole and law enforcement, that divorce is not present here.
Further, in King, the majority cited Griffin v. Wisconsin for the proposition that “[although a probation officer is not an impartial magistrate, neither is he the police officer.” Id. at 126 (quoting 483 U.S. 868, 876, 107 S.Ct. 3164, 3170, 97 L.Ed.2d 709, 719 (1987)). Here, of course, the searchers were police officers in every meaningful sense of the word.
Second, King emphasized the “ongoing supervisory relationship” between the parole officer and the parolee. Id. at 122 (quoting Griffin, 483 U.S. at 879, 107 S.Ct. at 3171, 97 L.Ed.2d at 721). It cites “[t]he absence of an adversarial relationship” between the parolee and the parole officer. Id. at 125. But here there was no ongoing relationship between the law enforcement officers who conducted the search and the parolee. Unlike in King, it does not matter to the majority that the law enforcement officers here were strangers to the parolee.
Third, King emphasized the limited nature of the holding. In King, the majority concluded that “parole officers have a special need to search the home of parolees as authorized by a parole agreement and not refused by the parolee when done to promote the goals of parole.” Id. at 126. The fact that the parolee had not refused the search by a parole officer was an integral part of the holding. Id. at 126-27. The majority now abandons that limitation in King today.
After filing a full-throated dissent in King, I nonetheless ended on a somewhat optimistic note, emphasizing the narrowness of the ruling. I wrote
the majority opinion is extremely limited. It does not apply to the activities of law enforcement. It does not endorse freestanding reasonableness, a hungry beast that could threaten the warrant requirement- It reserves the question of whether a parolee has a right to refuse the search.
Id. at 136 (Appel, J., dissenting). My optimism that the limits of King might hold has proved unfounded.
*420 •We are left, at least for now, -with a requirement of reasonable suspicion before law enforcement officers, who happen to be organizationally part of probation bureaucracies, may conduct a warrantless search of a probationer’s home. And so, defenders of a vibrant search and seizure jurisprudence under article I, section 8 of the Iowa Constitution have no choice but to once again retreat to the next position and dig in. Perhaps it is possible that the reasonable suspicion limitation may come to mean something under article I, section 8 of the Iowa Constitution. See Ochoa, 792 N.W.2d at 287-91. In other words, it may yet have real teeth.
If reasonable suspicion does prove to have real teeth, the consequences of today’s ruling may be somewhat contained. The benefits of a contemporaneous record that arises from a warrant requirement will be lost, of course, and the substantive protection against arbitrary search and seizures will be somewhat watered down. If teeth are absent, however, our search and seizure law will slide further down the abys§ of unfettered discretionary searches and seizures for thousands of our citizens who are on probation. For them, constitutional search and seizure protection under article I, section 8 will be rendered meaningless by courts responding to perceived pragmatic considerations rather than the command .of the constitution itself. If so, we will have drifted a long, long way from the declarations in State v. Cullison that parolees, and by implication probationers, do not suffer a diminution of constitutional protections from warrantless searches and seizures in their homes simply because of then’ status as parolees. 173 N.W.2d 533, 537 (Iowa 1970).
II. Application of Exclusionary Rule in Parole Proceedings.
Because the search, in my view, was invalid without a warrant, I now address the next question, namely, whether the exclusionary rule applies in probation revocation proceedings. As noted by the parties, in State v. Swartz, 278 N.W.2d 22, 26 (Iowa 1979), and Kain v. State, 378 N.W.2d 900, 903 (1985), we held the exclusionary rule did not apply in probation determinations. In Swartz, we emphasized the purpose of the exclusionary rule was “to discourage unconstitutional acts by law enforcement officials.” 278 N.W.2d at 23. Kcdn simply followed Swartz with no analysis. Kain, 378 N.W.2d at 902-03.
After Swartz and Kain were decided, however, we then decided State v. Cline, 617 N.W.2d 277 (2000), abrogated in part on other grounds in State v. Turner, 630 N.W.2d 601, 606 n.2 (Iowa 2001). In Cline, we addressed the argument that the sole purpose of the exclusionary rule was to deter police misconduct. 617 N.W.2d at 289. As is apparent, the notion that the sole purpose of the exclusionary rule is to deter misconduct was the centerpiece in Swartz, 278 N.W.2d at 26, and its follower Kain, 378 N.W.2d at 903. We also considered the argument' that the riile has no ameliorative effect on the judicial or legislative branches. Cline, 617 N.W.2d at 289-90.
In Cline, we disagreed with both propositions. Id. Unlike in Swartz, we stressed that the exclusionary rule serves purposes beyond deterrence of police misconduct. Id. at 289. We noted that in oür early search and seizure cases we emphasized the exclusionary rule “provided a remedy for a constitutional violation and protected judicial integrity.” Id.; see also State v. Sheridan, 121 Iowa 164, 168, 96 N.W. 730, 731 (1903) (stating that to admit illegally obtained evidence is to “emasculate the constitutional guarantee”).
Thus, we emphatically stated in Cline that the exclusionary rule was constitutionally based, not simply a judicially created remedy, and that the exclusionary rule *421 protects the integrity of the court by refusing to admit illegally obtained evidence. 617 N.W.2d at 289-90. As a result, we joined a growing number of states declining, under state search and seizure constitutional provisions, to adopt the so-called “good faith” exception to the exclusionary rule created by the United States Supreme Court in United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677, 698 (1984). Cline, 617 N.W.2d at 289-93; see, e.g., State v. Marsala, 216 Conn. 150, 579 A.2d 58, 66-68 (1990); Gary v. State, 262 Ga. 573, 422 S.E.2d 426, 428-29 (1992); State v. Lopez, 78 Hawai’i 433, 896 P.2d 889, 902 (1995); State v. Guzman, 122 Idaho 981, 842 P.2d 660, 671-72 (1992); State v. Novembrino, 105 N.J. 95, 519 A.2d 820, 854-57 (1987); State v. Gutierrez, 116 N.M. 431, 863 P.2d 1052, 1067 (1993); Commonwealth v. Edmunds, 526 Pa. 374, 586 A.2d 887, 905 (1991); State v. Oakes, 157 Vt. 171, 598 A.2d 119, 126-27 (1991); State v. Scull, 361 Wis.2d 288, 862 N.W.2d 562, 572 (2015).
In states that emphasize judicial integrity and the constitutional nature of the exclusionary' rule, the exclusionary rule has been applied in probation and parole settings. The reasoning is obvious. In State v, Marquart, the New Mexico Court of Appeals considered whether the search and seizure provision of the’ New 'Mexico Constitution required the exclusionary rule to be applied in probation revocation proceedings. 123 N.M. 809, 945 P.2d 1027, 1031 (N.M. Ct. App. 1997). The Marquart court noted that the New Mexico Supreme Court had rejected a good-faith exception to the exclusionary rule in Gutierrez, 863 P.2d at 1067. 945 P.2d at 1031. It further noted that in doing so, the New Mexico Supreme Court emphasized that the exclusionary rule is not a “mere ‘judicial remedy1 ” but instead was a rule “to effectuate ... the constitutional right of the accused.” Id. (quoting Gutierrez, 863 P.2d at 1067). The Marquart court held the exclusionary rule applied in probation revocation proceedings. Id.
In State ex rel. Juvenile Department v. Rogers, the Supreme Court of Oregon considered the application of the exclusionary rule under Oregon’s constitutional provision related to search and seizure in probation revocation proceedings. 314 Or. 114, 836 P.2d 127, 129 (1992). The Oregon court, also emphasizing the “personal right to be free from an unlawful • search and seizure,” found the exclusionary rule applied in probation proceedings. Id. at 129-30. Similar reasoning with comparable results may be found in State v. Dodd, 419 So.2d 333, 335 (Fla. 1982), Mason v. State, 838 S.W.2d 657, 659 (Tex. Ct. App. 1992), and Howard v. State, 168 Ga.App. 143, 308 S.E.2d 424, 425 (1983).
In my view, the logic of Cline compels application of the exclusionary rule in parole and probation proceedings. Under Cline, the exclusionary rule is not merely a judicially created remedy but enforcement of a personal constitutional right. 617 N.W.2d at 289. Further, the integrity of the court is equally affected by introduction of tainted evidence in a parole proceeding as it is in any other case.
III. Conclusion.
For the above reasons, I would conclude that the search without a warrant in this case was invalid under article I, section 8 of the Iowa Constitution. Further, as a result of the constitutional violation, evidence obtained from the search is inadmissible in a probation revocation proceeding. As a result, I would reverse the decision of tlmdistriet court in this case.
Wiggins and Hecht, JJ., join this dissent.