Cheshire
No. 89-239

THE STATE OF NEW HAMPSHIRE

v.

NELSON FIELD

March 9, 1990

*John P. Arnold*, attorney general (*Mark E. Howard*, assistant attorney general, on the brief, and *David S. Peck*, assistant attorney general, orally), for the State.

*Robert J. Moses*, of Amherst, by brief and orally, for the defendant.

JOHNSON, J. After an April 27, 1989 probation revocation hearing, the Superior Court (*Hollman*, J.) found that defendant violated the rules of his probation. The court sentenced defendant to two to four years in the State Prison, with credit for pretrial incarceration, and defendant now appeals. For the reasons stated below, we affirm.

The facts of this case are as follows. Defendant pleaded guilty to a charge of violating RSA 159:3 (Supp. 1989) (felon in possession of a weapon) on March 23, 1988. As a result of his negotiated plea, he was sentenced to one year in the house of correction and two years of probation. The sentence was deferred for one year, at the end of which defendant was to be given the opportunity to show cause why that sentence should be suspended. He signed an acknowledgment of rights form before entering his plea of guilty to this offense.

There is no evidence that defendant signed the standard probation form, which explains the rules of probation, upon receiving this sentence. However, defendant had been on probation before and had signed the standard probation form at the commencement of that earlier probation period. In addition, Probation/Parole Officer (PPO) Dennis Kinnan, defendant's PPO during the earlier probation period, testified:

> "Basically, I had the same conversation with Nelson [at the start of this probation] that I had before .... 'You're back on probation. You know what the rules are. Do you have any questions on what you have to do?' And this last time was, 'Nelson, this is really the last chance. You've got to fulfill, you've got to follow the rules of probation. You've got to do what you've got to do here or you're going to go to Prison.' That was the discussion."

■ Based on this evidence, we hold that the defendant was sufficiently apprised of his obligation as a person on probation to not possess a weapon, explosive and/or firearm and to be of good behavior during the period of probation.

In early September, 1988, the Jaffrey Police Department obtained a warrant for defendant's arrest for his suspected role in a theft of three firearms and some ammunition. Three officers, Pelio, Ellis, and Griffin (a State trooper), went to defendant's apartment complex on September 15, 1988, and attempted to execute the warrant. No one responded to the officers' knock, but upon leaving the building, Pelio met Charles Rocheleau, a part-time police officer who had been outside the building. Rocheleau told Pelio he had just seen a man kick out a screen in a second-floor window (defendant's apartment was located on the second floor), jump out of the window onto a dormer over a first-floor door, jump onto the ground, and run into another part of the building. The officers then returned to defendant's apartment, knocked on the door, and, getting no response, forced the door open with the intention of executing the arrest warrant if the defendant was still within the apartment. They had a reasonable belief that the defendant was still in the apartment, and that perhaps some other person had jumped out the window, or that the person who had exited had returned to the apartment.

Once inside defendant's apartment, the officers searched for him in each of the rooms, to no avail. During this search, Pelio noticed an open, apparently damaged window in one of the bedrooms. Griffin, meanwhile, found a .22 calibre rifle in the living room. It is unclear from the record whether the rifle was found "in plain view."

After the search, Pelio called defendant's new PPO, Sherwood Vachss, and gave him a "basic synopsis" of what had happened and what had been found in the apartment. Vachss testified at the probation revocation hearing that the officers did not tell him they searched for anything or anyone other than defendant.

In response to Pelio's call, Vachss conducted his own search of defendant's apartment, pursuant to Superior Court Rule 107(h) (allowing PPO's to make reasonable searches of a probationer's residence). Vachss found letters addressed to defendant on a dresser in one of the bedrooms. He opened the dresser and found more papers bearing defendant's name, as well as boxes of .22 calibre long-rifle ammunition. Vachss seized the ammunition and filed a violation of probation report against defendant, alleging two violations: "(1) Possession of weapon, explosive and/or firearms; and

(2) Failure to be of good behavior (did resist apprehension of the Jaffrey Police)." Following a probation revocation hearing, the superior court found defendant chargeable on these violations and sentenced him to two to four years of incarceration.

On appeal, defendant makes three arguments. First, he argues that the superior court subjected him to double jeopardy and violated his due process rights under the State Constitution. The court, he maintains, should not have imposed on him a longer sentence for probation violation than the sentence he negotiated for and received when he pled guilty to the underlying crime of being a felon in possession of a firearm. Second, defendant argues that the superior court's refusal to apply the exclusionary rule violated his rights under part I, article 19 of the State Constitution. Third, he argues that the superior court lacked sufficient evidence to find that he had violated the terms of his probation.

## I. *Double Jeopardy and Due Process*

We need not address defendant's first argument because he did not raise it properly below. As we stated in *State v. Dellorfano,* 128 N.H. 628, 517 A.2d 1163 (1986),

> "the defendant must fulfill two preconditions before triggering a State constitutional analysis: first, the defendant must raise the State constitutional issue below; second, the defendant's brief must specifically invoke a provision of the State Constitution."

*Id.* at 632, 517 A.2d at 1166 (citations omitted). A defendant must "raise a clear State, as distinct from federal, constitutional claim at the trial court level...." *Id.* at 633, 517 A.2d at 1166 ("the defendant objected to the admission of his statements to police based only on generalized 'constitutional' concerns"); *see also State v. Westover,* 127 N.H. 130, 131, 497 A.2d 1218, 1219 (1985); *State v. Cimino,* 126 N.H. 570, 572–73, 493 A.2d 1197, 1199-1200 (1985).

In his brief, defendant properly fleshed out his State constitutional double jeopardy and due process arguments, although he incorrectly referred to part I, article 19 for these principles. However, defendant failed to raise a State double jeopardy or due process claim at the probation revocation hearing. Defendant's counsel stated he had "some due process concerns" about his client's augmented sentence, but he neglected to invoke the State Constitution in connection with these concerns. The words "double jeopardy" were never invoked by defense counsel. Having failed to raise these State constitutional issues at the hearing, the

defendant has failed to preserve these issues on appeal. *State v. Westover supra.* Further, although defendant implicated the Federal Constitution at the hearing, he nonetheless failed to raise the issue in either his notice of appeal or brief. Thus, we need not consider the issue on appeal. *Aubert v. Aubert* 129 N.H. 422, 529 A.2d 909 (1987).

Assuming, *arguendo*, that defendant properly raised State double jeopardy and due process claims below, *State v. White*, 131 N.H. 555, 556 A.2d 308 (1989) bars him from winning relief. In that case, we held that "[s]tatutory law authorizes courts to impose fines or imprisonment upon probation violation up to the balance of the maximum which could have been imposed originally." *Id.* at 557, 556 A.2d at 310 (citing RSA 651:2, VII). Addressing the defendant's double jeopardy claim, we stated that the trial "court's jurisdiction had been continued by reason of the provision for probation.... When probation is imposed, the sentencing function is not ended, however strongly the parties may hope that it has." *Id.* at 558, 556 A.2d at 310-11. Thus the defendant's protection against double jeopardy was not violated.

Similarly, *White* held that the defendant's due process rights were not violated. Citing *Stapleford v. Perrin*, 122 N.H. 1083, 453 A.2d 1304 (1982), we stated that "a defendant whose retained liberty interest is to be revoked in whole or in part is entitled to a due process hearing and the opportunity to be heard to test the State's case against him and to offer evidence in his own behalf in an effort to defeat the revocation." Defendant was given such a hearing on April 27, 1989. *White*, 131 N.H. at 558, 556 A.2d at 311.

■ Defendant maintains that this case can be distinguished from *White* because *White* did not involve a suspended sentence, whereas such a sentence was an integral part of his punishment. This argument fails because we affirmed White's conviction *in spite* of the fact that he received no suspended sentence. We find no other reason to distinguish *White* from defendant's case, and therefore *White* controls.

II. *Exclusionary Rule*

Defendant's second argument, concerning the exclusionary rule and part I, article 19 of the State Constitution, was properly raised below. During his closing argument, defendant's counsel opined:

"The State ... obtained evidence in violation of Mr. Field's constitutional rights in a manner sufficient by making a forcible entry without a warrant and knowing they didn't have a warrant so as to shock the conscience of this Court

and thus abrogate Mr. Field's federal and state constitutional rights."

Applying the standard detailed above to these words, we hold that defendant preserved his part I, article 19 claim. But since defendant did not in his brief analyze this search-and-seizure issue under the Federal Constitution, we deem that aspect of the issue waived. *Dobbins v. Berwick*, 126 N.H. 477, 479, 493 A.2d 496, 498 (1985).

Defendant argues that the superior court violated his rights under part I, article 19 of the State Constitution by refusing to suppress the "fruit of the poisonous tree." He notes that the superior court based one of its findings of violation on the ammunition found by PPO Vachss. Vachss would not have found the ammunition if Officer Pelio had not told him about the Jaffrey Police Department's effort to arrest defendant. Since defendant claims the Jaffrey Police Department's original search of his apartment was illegal, he argues that the evidence of the ammunition should have been suppressed as the fruit of the poisonous tree. We disagree.

We need not decide whether the police department search was illegal, or whether the alleged illegality tainted PPO Vachss's subsequent search. As defendant pointed out, this court has already held that the exclusionary rule does not apply to probation revocation proceedings. *Stone v. Shea*, 113 N.H. 174, 304 A.2d 647 (1973). Defendant urges us to overrule this decision, but we see no reason to do so.

"'Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.' *Harris v. New York*, 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645 (1971). In *Morrissey v. Brewer supra*, the Court expressed the view that 'the [revocation] process should be flexible enough to consider evidence ... that would not be admissible in an adversary criminal trial.' *Id.* 489, 92 S. Ct. 2604."

*Stone v. Shea*, 113 N.H. at 177–78, 304 A.2d at 649. This reasoning remains sound, and we therefore decline to disturb this holding.

III. *Sufficiency of the Evidence*

In defendant's third argument, he asserts that the superior court lacked sufficient evidence to find that he violated the terms of his probation. To recap, defendant was found chargeable on two probation violations: (1) possession of a weapon, explosive, and/or firearm, and (2) failure to be of good behavior (resisted apprehension).

He argues first that the superior court erred as a matter of law in ruling that the rounds of live ammunition found in his dresser are explosives. At the probation revocation hearing, defendant asked the court to specify whether the ammunition could be considered a weapon, an explosive, or a firearm:

"Mr. Moses:   ... I think the Court may have to make a decision on that.

    ...

The Court:   Now wait a minute. Well, a shell is not a weapon. A bullet is not a weapon. A bullet is not a firearm, but it is an explosive.

Mr. Moses:   As a matter of law, your Honor.

The Court:   So far as I'm concerned.

Mr. Moses:   Thank you."

Defendant did not contest the superior court's characterization at this time, nor at any other time during the hearing and therefore cannot do so on appeal. *State v. Stearns*, 130 N.H. 475, 486, 547 A.2d 672, 680–81 (1988). Moreover, defendant's argument that a round of live ammunition is not an explosive strains credulity.

Second, defendant argues that the superior court erred in finding that the defendant was in possession of the ammunition. The State's evidentiary burden at the hearing was to show "misplaced trust ... by a preponderance of the evidence," *Stapleford v. Perrin*, 122 N.H. 1083, 1089, 453 A.2d 1304, 1307 (1987). On appeal, we must view the evidence in the light most favorable to the State, *State v. Guglielmo*, 130 N.H. 240, 244, 544 A.2d 25, 28 (1987); and we cannot overturn the superior court's findings unless they are unsupported by the evidence. *Richelson v. Richelson*, 130 N.H. 137, 144, 536 A.2d 176, 181 (1987).

Defendant has not met his appellate burden. There was ample, uncontroverted evidence at the hearing that PPO Vachss found the ammunition in defendant's room. Defendant's own witness identified the room as defendant's, and the ammunition was found in a dresser next to papers and letters bearing his name. This

evidence supports the superior court's finding that defendant was in possession of the ammunition. *See State v. Pike,* 128 N.H. 447, 449–50, 514 A.2d 1279, 1280–81 (1986) (describing doctrine of "constructive possession").

Third, defendant argues that the superior court's finding that he, and not someone else, jumped out of the second-floor window was unsupported by the evidence. Defendant's witness, Lori Scerra, testified that Rocheleau, the part-time police officer who witnessed the jump, was not in as good a position to view the jump as he claimed. In addition, she testified that she overheard the Jaffrey police officers question whether the jumper was in fact the defendant. Rocheleau, however, identified the defendant as the jumper at the hearing.

Any "conflicts as might be found in the testimony, questions about the credibility of witnesses, and the weight to be given to testimony are for the [trial court] to resolve." *Ballou v. Ballou,* 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978). "Our only function [on review] is to determine whether a reasonable [person] could have reached the same decision as the [trial court] on the basis of the evidence before [it]." *Sargent Lake Ass'n v. Dane,* 118 N.H. 720, 722, 393 A.2d 559, 561 (1978). Considering all the evidence presented to the superior court, and considering that the court was in the best position to weigh the credibility of the witnesses, we find no error in the court's finding that defendant jumped out of the window.

Fourth, defendant argues that, assuming he did jump out of the window, the superior court had insufficient evidence to find that he resisted arrest (and thus failed to be of good behavior). Since there was no evidence that he knew the officers came to his apartment to arrest him, defendant argues, the superior court had no basis for finding that he knowingly resisted arrest. To bolster this argument, defendant relies on Detective Pelio's inability to remember the words used to announce the officers' presence and purpose at defendant's apartment door.

Defendant's argument merits little consideration. We hold that a "reasonable [person] could have reached the same decision as the [trial court]," that defendant jumped out of the window to resist arrest, "on the basis of the evidence before [it]." *Sargent Lake Ass'n v. Dane supra.*

The superior court made no errors of law or fact, and we therefore affirm.

*Affirmed.*

All concurred.