584

Strafford County Probate Court
No. 96-106

## IN RE ESTATE OF OLIVETTE E. HEMON

January 20, 1998

*Roland E. Hemon*, of Dover, and *Heloise Hemon Davis*, of Averill, Vermont (*Mr. Hemon* and *Ms. Davis* on the brief, and *Mr. Hemon* orally), *pro se*.

*John D. McIntosh*, of Concord, by brief and orally, for the Office of Public Guardian, as Special Administrator of the Estate of Olivette D. Hemon.

BRODERICK, J. Appellants Roland Hemon (Roland) and Heloise Hemon Davis (Heloise) appeal the Strafford County Probate Court's (*Cassavechia*, J.) denial of Roland's motion challenging the probate court's exercise of jurisdiction under RSA 464-A:3 (Supp. 1997). We affirm.

The history of this case is long and arduous. In May 1984, Armand Hemon (Armand) and Heloise filed a petition for guardianship over their mother, Olivette Hemon (Olivette). They did so out of concern

for her failing mental and physical health while in the care of her son Roland and because of the *de facto* control Roland exercised over her estate without providing an accounting. The Strafford County sheriff made several unsuccessful attempts to serve Olivette with the petition. Roland tried to accept service for his mother at the sheriff's office but refused to identify her location when told that service had to be in hand. On August 24, 1984, after an *ex parte* hearing, the probate court granted temporary guardianship of Olivette to Armand and Heloise. The court limited the temporary guardianship to physical custody and specifically noted that it would not make a final decision on permanent guardianship without first hearing from Olivette directly.

On December 10, 1984, after further hearing and a chambers conference with the parties, including Roland's counsel, Olivette, and Olivette's counsel, the probate court ruled that Olivette was incapacitated and in need of a guardian in accord with the parties' stipulation and the court's independent findings. The probate court appointed the Office of Public Guardian (OPG) to investigate the suitability of a permanent guardian while Armand and Heloise continued as interim guardians. On January 14, 1985, the probate court appointed the OPG to serve as interim guardian, along with Armand and Heloise, for the sole purpose of collecting and itemizing Olivette's assets.

On April 11, 1985, the probate court appointed the OPG as Olivette's permanent guardian, rejecting Armand, Heloise, and Roland. The probate court found Roland unsuitable to serve as Olivette's guardian, observing that Olivette's health had declined while in his care. The probate court also noted that Roland, if appointed guardian, would have a conflict of interest in determining whether to restore assets to Olivette that he had acquired from her.

On October 15, 1985, the OPG filed a bill in equity in superior court seeking to recover Olivette's assets from Roland, alleging that he had wrongfully converted them for his own benefit. On July 23, 1987, after a jury verdict, *see* RSA 491:14, :16 (1997), in the OPG's favor, the Trial Court (*Nadeau*, J.) ordered Roland to return Olivette's personal belongings, stocks, bonds, bank accounts, promissory notes, and negotiable instruments and to reconvey properties located in Maine and Florida. The trial court later ordered Roland to account for income and expenses associated with Olivette's Maine property. Roland was subsequently held in civil contempt by the trial court on two occasions for violating its order to return Olivette's property. The contempt resulted in his temporary imprisonment.

On March 26, 1989, Olivette died. In April 1989, in anticipation of a will contest between a 1976 will and a 1983 will, the OPG filed a petition with the probate court to appoint a special administrator for Olivette's estate. Her three children, among others, were beneficiaries of her 1976 will. In her 1983 will, drafted while she was in Roland's care, Roland was the sole beneficiary and executor. The OPG questioned whether Olivette was competent when she executed the 1983 will or whether it was the product of Roland's undue influence. On May 25, 1989, the probate court appointed the OPG as special administrator. The court specifically ruled that it had jurisdiction over Olivette's estate, citing its exercise of jurisdiction in the prior guardianship proceedings under RSA 464-A:3 based on Olivette's Strafford County residency.

During the will contest, Roland refused to submit the 1983 will to the probate court based on his belief that the court continued to lack jurisdiction. Because of Roland's refusal and his undisputed status as sole beneficiary under the 1983 will, the court held that Roland waived any rights under that instrument. The court also summarily rejected Roland's contention that it lacked jurisdiction, documenting his repeated and unsuccessful jurisdictional challenges of the guardianship and estate proceedings, including six appeals to the New Hampshire Supreme Court and the United States Supreme Court. In addition, the court interpreted a letter from Roland threatening a judicial conduct complaint should the court rule against him as an attempt to invade independent judicial decision-making. The court informed Roland that it was obligated to send the letter to the attorney general's office. See RSA 640:3, I(c) (1996). On October 1, 1993, the probate court found that the 1976 will was proved.

The present appeal is based on the probate court's denial of Roland's motion challenging jurisdiction under RSA 464-A:3, filed in conjunction with the sixth accounting of Olivette's estate. At the hearing on the sixth accounting in December 1995, the probate court afforded Roland the opportunity to address his motion. Through colloquy with Roland, the court established that his motion was based on the same challenge to jurisdiction he had previously and repeatedly raised with the probate court and on appeal. The probate court denied Roland's motion, and this appeal followed.

On appeal, Roland and Heloise again assert that the probate court lacked jurisdiction under RSA 464-A:3 concerning the August 21, 1984, *ex parte* temporary guardianship proceeding because Olivette was not a resident of New Hampshire. This lack of jurisdiction,

appellants argue, caused all subsequent proceedings and orders, including those relating to Olivette's estate, to be void.

■ ■ "[A]t some point litigation over a particular controversy must come to an end." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 273, 525 A.2d 709, 711 (1987) (quotation omitted). The purpose of the doctrines of res judicata and collateral estoppel is to preclude parties from relitigating an issue or claim that was actually or necessarily litigated in a prior action and has been finally determined. *See Johnson v. Coe*, 142 N.H. 182, 187, 697 A.2d 939, 942 (1997) (res judicata); *Putnam Lumber Co. v. Eddie Nash & Sons*, 141 N.H. 670, 671, 690 A.2d 570, 571 (1997) (collateral estoppel). We hold that the appellants are barred from relitigating the probate court's finding of Olivette's New Hampshire residency.

Olivette's New Hampshire residency was actually decided by the probate court on numerous occasions throughout the guardianship and estate proceedings, including:

(1) the August 21, 1984, hearing at which evidence was presented regarding Olivette's residency with Roland in Dover, New Hampshire;

(2) the April 11, 1985, order appointing the OPG as Olivette's permanent guardian in which the probate court found that Olivette moved into Roland's home in October 1982, and that Olivette had lived with Roland in Dover, New Hampshire for more than one year at the time of the order; and

(3) the May 25, 1989, order appointing the OPG as special administrator of Olivette's estate in which the probate court noted that its jurisdiction over the prior guardianship proceeding was based on Olivette's residency in the State and county pursuant to RSA 464-A:3.

■ The probate court's finding that Olivette was a resident of Strafford County at the time of the guardianship proceedings constitutes a final decision. We previously dismissed, as untimely, Roland's appeal of the probate court's April 11, 1985, order, which included specific factual findings regarding Olivette's residency. *See In re Olivette D. Hemon*, No. 85-319 (N.H. January 31, 1986). Even if Roland had timely filed the appeal, he failed to challenge the probate court's findings on residency; thus, the issue was waived. *See State v. Field*, 132 N.H. 760, 764, 571 A.2d 1276, 1278 (1990)

(reasoning that even if issue were properly preserved below, defendant waived issue by failing to include it in notice of appeal); *Morin v. J.H. Valliere Co.*, 113 N.H. 431, 434, 309 A.2d 153, 155 (1973) (unappealed decision is a final judgment).

Roland's repeated challenges to the probate court's jurisdiction based on Olivette's New Hampshire residency, including the present appeal, lack merit. *See, e.g., Hemon & a. v. Office of Public Guardian & a.*, No. 88-074 (N.H. June 29, 1988); *In re Estate of Olivette D. Hemon*, No. 89-289 (N.H. October 19, 1989); *Petition of Roland E. Hemon*, No. 89-392 (N.H. October 19, 1989); *Hemon v. Harman*, No. 90-112 (N.H. June 6, 1990); *In re Estate of Olivette D. Hemon*, No. 90-617 (N.H. March 19, 1991); *In re Estate of Olivette D. Hemon*, No. 95-087 (N.H. May 19, 1995).

Appellants' remaining arguments either were not preserved for appeal, *see Dube v. Town of Hudson*, 140 N.H. 135, 138, 663 A.2d 626, 628 (1995), or are without merit, *see Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993). Therefore, we need not address them.

*Affirmed.*

All concurred.